CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 21 2019

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| STEPHEN L. CHURCH, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | Civil Action No. 7:18CV00088 <br><br> **MEMORANDUM OPINION** <br><br> By: Hon. Glen E. Conrad <br> Senior United States District Judge |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is established pursuant to 42 U.S.C. § 405(g). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the requirements for entitlement to benefits under the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Stephen L. Church, Jr., was born on December 13, 1972. He eventually graduated from high school. (Tr. 33). Mr. Church has previously worked as a garage door installer and painting supervisor. (Tr. 44–45). He last worked on a regular and sustained basis in 2012. (Tr. 45, 171). On April 29, 2014, Mr. Church filed an application for a period of disability and disability insurance benefits. In filing his current claim, Mr. Church alleged that he became

disabled for all forms of substantial gainful employment on June 1, 2012, due to degenerative disc disease, lumbar facet syndrome, lumbar spondylosis, fibromyalgia, polyarthralgia, depression, anxiety, diabetes, and gout. (Tr. 177). Mr. Church now maintains that he has remained disabled to the present time. The record reveals that Mr. Church met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See generally 42 U.S.C. §§ 416(i) and 423(a).

Mr. Church's application was denied upon initial consideration and reconsideration. He then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated January 23, 2017, the Law Judge also determined, after applying the five-step sequential evaluation process, that Mr. Church is not disabled.* See 20 C.F.R. § 404.1520. The Law Judge found that Mr. Church suffers from several severe impairments, including degenerative disc disease, spondylosis with myelopathy, peripheral neuropathy, obesity, and osteoarthritis, but that these impairments do not, either individually or in combination, meet or medically equal the requirements of a listed impairment. (Tr. 16–17). The Law Judge then assessed Mr. Church's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. [§] 404.1567(b) except lift and/or carry twenty pounds occasionally, ten pounds frequently, sit for six hours total in an eight-hour day, stand for six hours total in an eight-hour day, walk for six hours total in an eight-hour day, occasionally climb ramps and stairs, never climb ladders[,] ropes or scaffolds, occasionally stoop and crouch, never kneel, never balance, never crawl, off task five percent of the workday in addition to normal breaks, and absent one day per month.

---

* The process requires the Law Judge to consider, in sequence, whether a claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and (5) if not, whether he can perform other work in the national economy. 20 C.F.R. § 404.1520. If a decision can be reached at any step in the sequential evaluation process, further evaluation is unnecessary. Id.

(Tr. 18). Given such a residual functional capacity, and after considering testimony from a vocational expert, the Law Judge determined that Mr. Church is unable to perform any of his past relevant work. (Tr. 21). However, the Law Judge found that Mr. Church retains the capacity to perform other work roles existing in significant number in the national economy. (Tr. 21). Accordingly, the Law Judge concluded that Mr. Church is not disabled, and that he is not entitled to a period of disability or disability insurance benefits. See 20 C.F.R. § 404.1520(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mr. Church has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159–60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. The record reveals that on the alleged onset date of June 1, 2012, Mr. Church presented to his primary care physician, Dr. Quasar Raza, with complaints of pain in his back and lower joints, which was "worse at his place of work." (Tr. 270). Mr. Church reported that he had experienced joint pain since being struck by lightening approximately 20 years earlier. (Tr. 270, 305). Dr. Raza noted that plaintiff was

"morbidly obese" but in "no distress," and that his alleged pain did not radiate or result in tingling or reduced strength in his lower extremities. (Tr. 270–71). Dr. Raza ordered a variety of tests, including serologic studies for use in assessing plaintiff's complaints of pain. (Tr. 271).

Mr. Church returned to Dr. Raza for a follow-up examination on July 20, 2012. Dr. Raza noted that the laboratory tests "showed that [plaintiff's] rheumatoid factor was negative" and that "ANA was negative." (Tr. 268). Although plaintiff continued to complain of "aches and pains in various places," he was in "no distress" and exhibited no edema. (Tr. 268). Dr. Raza prescribed Savella for possible fibromyalgia. He also diagnosed plaintiff with early-onset diabetes mellitis and recommended that plaintiff utilize "aggressive weight loss strategies." (Tr. 268).

Mr. Church did not see Dr. Raza again until April 11, 2013, after missing or cancelling multiple appointments. By that point, plaintiff's diabetes was "poorly controlled." (Tr. 265). Dr. Raza prescribed Levemir (insulin) and placed plaintiff on a calorie-restricted diet. When Mr. Church returned to Dr. Raza two weeks later, his blood sugar levels had improved and he appeared to be doing "much better." (Tr. 265). Although x-rays of plaintiff's spine showed only "mild" degenerative changes (Tr. 331), Dr. Raza noted that plaintiff continued to complain of pain and appeared to be "obsessed with it." (Tr. 263).

On January 23, 2014, Mr. Church saw Dr. Marc Swanson at Blue Ridge Pain Management Associates for an initial consultation. (Tr. 305). Plaintiff reported that he had been experiencing "moderately severe diffuse pain in the back, feet, and hands," which worsened with exertion, weather changes, and coughing. (Tr. 305). On physical examination, Mr. Church exhibited tenderness in the lumbosacral spine with moderately limited range of motion. However, plaintiff's muscle tone was within normal limits, straight leg raising tests were negative bilaterally,

his joint stability was within normal limits, and he ambulated without difficulty. Dr. Swanson diagnosed plaintiff with chronic pain syndrome for which he prescribed Norco and recommended warm water exercises and weight loss. (Tr. 308). When plaintiff saw Dr. Raza six days later, plaintiff reported that he felt "much, much better" after starting the pain medication. (Tr. 257). Likewise, on February 19, 2014, Mr. Church's musculoskeletal examination was "unremarkable" and Dr. Raza noted that the pain medication continued to be "effective." (Tr. 253–54).

On February 26, 2014, Dr. Swanson performed a lumbar paravertebral facet joint injection with fluoroscopy. (Tr. 313). Plaintiff tolerated the procedure well, and he was discharged in satisfactory condition. Notes from a follow-up visit on May 29, 2014 indicate that plaintiff's pain was "much better." (Tr. 318). An examination of plaintiff's lumbosacral spine revealed some tenderness and reduced range of motion. (Tr. 320). However, the straight leg raising test was negative bilaterally, plaintiff's joint stability was within normal limits, his gait was normal, and he was able to stand without difficulty. (Tr. 320). Dr. Swanson continued to recommend warm water exercises and weight loss. (Tr. 321). An MRI conducted at plaintiff's request on June 3, 2014 revealed a "small right foraminal disc herniation" that did "not appear to affect the exiting nerve." (Tr. 317, 351).

Follow-up notes from Dr. Swanson indicate that Mr. Church continued to complain of pain in his lower back and legs during the second half of 2014. (Tr. 353, 357, 361). However, musculoskeletal examinations remained unchanged from prior visits. Although Mr. Church exhibited signs of tenderness and reduced range of motion, his strength, motor function, reflexes sensation, gait, and station were normal, and he was able to stand without difficulty. (Tr. 355, 359, 363).

The record indicates that Mr. Church was not treated by Dr. Swanson in 2015. Nonetheless, on February 27, 2015, Dr. Swanson completed a physical residual functional capacity assessment, in which he opined that plaintiff can occasionally lift up to twenty pounds, frequently lift up to ten pounds, stand and/or walk for approximately two hours in an eight-hour workday, and sit for approximately six hours in an eight-hour workday, as long as he is able to alternate between sitting and standing to relieve pain and discomfort. (Tr. 367). Dr. Swanson further opined that Mr. Church can occasionally stoop, crouch, and climb ramps or stairs, and that he can never crawl, kneel, balance, or climb ladders, ropes, or scaffolds. (Tr. 368). Dr. Swanson also completed a lumbar spine medical source statement, in which he opined that plaintiff can walk approximately two city blocks without rest or severe pain, that he can sit for no more than two hours without needing to get up, and that he can stand for approximately thirty minutes before needing to sit down or walk around. Dr. Swanson further opined that plaintiff would need to take two or three breaks per day for approximately fifteen minutes, that he would likely be "off task" for approximately fifteen percent each day, and that he would likely be absent from work about three days per month. (Tr. 374–75).

More than ten months later, on January 6, 2016, Mr. Church returned to Dr. Raza and reported that he had lost weight and felt "very well" overall. (Tr. 545). Plaintiff had no joint or muscle pain and his physical examination was normal. (Tr. 545–46). Notes from a subsequent visit on February 9, 2016 likewise indicate that plaintiff had experienced "significant improvement" with his blood sugar levels and had lost about five pounds. (Tr. 548). Plaintiff once again complained of no joint or muscle pain, and his physical examination was normal. (Tr. 548–49).

Approximately five months later, on July 30, 2016, Mr. Church returned to Dr. Swanson with complaints of "widespread pain." (Tr. 403). Dr. Swanson noted that plaintiff had been "struggling" after being taken off of Norco, and that he had recently tested positive for cocaine but denied using the drug on a consistent basis. (Tr. 403). Dr. Swanson also noted that Mr. Church was scheduled to receive a spinal cord stimulator implant for pain. (Tr. 403).

Plaintiff underwent the implant procedure on August 5, 2016. He tolerated the procedure well and was discharged with no complications. (Tr. 431). At the time of the procedure, Mr. Church reported that he had lost 65 pounds and was no longer taking insulin. (Tr. 427).

Five days later, Mr. Church returned to Dr. Raza for a follow-up visit. Dr. Raza noted that plaintiff's diabetes was "without complication" and that he did not report any joint or muscle pain. (Tr. 550). Plaintiff's physical examination was unremarkable, and Dr. Raza instructed him to return in four months. (Tr. 551).

At the administrative hearing held on December 8, 2016, Mr. Church testified that his muscles, arms, and back "ache all the time," and that the pain prevents him from sleeping more than three hours per night (Tr. 34, 35). Mr. Church also testified that he can't "sit or really stand much" and that he is only comfortable in his recliner "halfway inclined." (Tr. 35–36). Plaintiff estimated that he can sit for a maximum of fifteen or thirty minutes before needing to switch positions and that he can only stand for fifteen or twenty minutes at a time. (Tr. 36). Mr. Church also testified that he can only stay focused for approximately thirty minutes before being distracted by his symptoms and that it takes him approximately two hours to get back on task. (Tr. 37).

After considering all of the evidence of record, the Law Judge determined that Mr. Church's physical problems are not so severe as to prevent performance of a limited range of light work activity. In making this determination, the Law Judge found that Mr. Church's allegations

of totally disabling physical limitations are inconsistent with the clinical findings and other evidence in the record. (Tr. 19). The Law Judge further emphasized that plaintiff's physical impairments have been treated with relatively conservative measures and that none of plaintiff's treating physicians have recommended more invasive surgical procedures for pain or obesity. (Tr. 19–20).

The Law Judge also declined to accept Dr. Swanson's opinions regarding plaintiff's ability to work. The Law Judge emphasized that the limitations noted by Dr. Swanson were inconsistent with the medical evidence as a whole, including the physical findings documented in Dr. Swanson's own treatment notes. (Tr. 20). The Law Judge observed that the "only abnormal findings were of tenderness and limited range of motion," and that "Dr. Swanson typically found the claimant to have normal strength, sensation, reflexes, and joint stability, with normal gait, ability to stand without difficulty, and normal tone with no atrophy." (Tr. 20). Thus, the Law Judge found that "[Dr. Swanson's] treatment notes do not support his medical source statement." (Tr. 20).

The Law Judge assigned somewhat greater weight to the opinions of Dr. Bert Spetzler, who reviewed the record at the request of the state agency. Dr. Spetzler opined that plaintiff is capable of meeting the lifting requirements for light work and that he can sit, stand, and/or walk for approximately six hours in an eight-hour workday. (Tr. 69). Dr. Spetzler also found that plaintiff has occasional postural limitations. (Tr. 69). The Law Judge determined that Dr. Spetzler's assessment of plaintiff's capacity to work is "generally consistent with the record." (Tr. 20). However, based on evidence received at the hearing level, the Law Judge also included "off task and absence expectations" in his residual functional capacity assessment, which he

determined would adequately accommodate "any distraction or deficiency in the claimant's ability to focus or concentrate because of pain or side effects of medications." (Tr. 20).

On appeal to this court, Mr. Church, through counsel, makes two arguments in support of his motion for summary judgment. First, plaintiff argues that the Law Judge erred in failing to give significant weight to Dr. Swanson's opinions. Having reviewed the record in its entirety, however, the court concludes that substantial evidence supports the Law Judge's decision. Although the opinions of a treating source are generally entitled to greater weight under the administrative regulations applicable to plaintiff's claim, see 20 C.F.R.§ 404.1527(c)(2), the court believes that, in the instant case, the Law Judge properly determined to give lesser weight to the opinions offered by Dr. Swanson. The Law Judge reasonably concluded that Dr. Swanson's opinions are unsupported by the objective findings on examination and inconsistent with the course of treatment provided. In short, the court believes that the Law Judge's decision to discount the opinions offered by Dr. Swanson, and to provide greater weight to the opinions of the state agency physician, is well supported by the record. See, e.g., Sharp v. Colvin, 660 F. App'x 251, 259 (4th Cir. 2016) (affirming the Law Judge's determination that the plaintiff's medical treatment, which included injections, pain medication, and physical therapy, "was conservative, and that her course of treatment supported a conclusion that she was able to maintain a routine work schedule"); Kevin D. v. Berryhill, No. 4:17-cv-00068, 2018 U.S. Dist. LEXIS 218053, at *35 (W.D. Va. Dec. 26, 2018), report and recommendation adopted, 2019 U.S. Dist. LEXIS 8506 (W.D. Va. Jan. 17, 2019) (finding no reversible error in the weights assigned to conflicting medical opinions where examination notes indicated that the plaintiff's symptoms responded well to "relatively routine treatment," including "a spinal cord stimulator").

In his second argument, Mr. Church contends that the Law Judge's assessment of his testimony and subjective complaints is not supported by substantial evidence. While Mr. Church testified at the administrative hearing that he experiences constant pain that prevents him from sleeping and substantially limits his ability to sit or stand, the Law Judge found that the plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence of record." (Tr. 19). The Law Judge emphasized that the examination notes indicate that the relatively conservative treatment measures provided by Dr. Swanson effectively managed plaintiff's pain and discomfort and that he was able to stand without difficulty. (Tr. 20). The Law Judge also noted that Mr. Church was consistently found to have normal motor strength and muscle tone, intact sensation, and a normal gait. (Tr. 20). Upon review of the record, the court is unable to discern any error in the Law Judge's credibility findings. The court agrees that Mr. Church's allegations of totally disabling symptoms are disproportionate to the clinical findings and inconsistent with the evidence indicating that plaintiff's pain and discomfort have been effectively controlled with relatively conservative treatment measures. Indeed, Dr. Raza's notes from the period immediately preceding the administrative hearing indicate that a review of systems was "negative for joint pain [and] muscle pain," and that plaintiff's physical examination was essentially normal. (Tr. 550–51). Accordingly, the court is satisfied that substantial evidence supports the Law Judge's decision not to fully credit Mr. Church's testimony.

In affirming the Commissioner's final decision, the court does not suggest that Mr. Church is free of all pain and discomfort. Indeed, the medical evidence confirms that plaintiff suffers from a combination of physical impairments that can be expected to result in subjective limitations. However, the record simply does not include clinical findings or objective test results

that are consistent with totally disabling symptomatology, and instead indicates that plaintiff's symptoms are subject to reasonable medical control through relatively conservative treatment measures. It must be recognized that the inability to work without any subjective complaints does not of itself render a claimant disabled. See Craig, 76 F.3d at 592. It appears to the court that the Law Judge considered all of the medical evidence, as well as all of the subjective factors reasonably supported by the record, in adjudicating Mr. Church's claim for benefits. Thus, the court concludes that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, the resolution of conflicts in the evidence is a matter within the province of the Commissioner, even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra.

The Clerk is directed to send certified copies of this memorandum opinion to all counsel of record.

DATED: This 21st day of May, 2019.

_____
Senior United States District Judge

11